| | |
|---|---|
| UNITED STATES DISTRICT COURT | |
| DISTRICT OF NEVADA | |
| * * * | |

| | |
|---|---|
| HANOVER INSURANCE COMPANY, a New Hampshire corporation,<br><br>Plaintiff,<br><br>v.<br><br>TERRA SOUTH CORPORATION d/b/a MAD DOG HEAVY EQUIPMENT, a Nevada corporation; THE FIRMANI CORPORATION, a Nevada corporation; ROCK HARD CONTRACTING, INC., a Nevada corporation; AMY T. FIRMANI and; JOHN FIRMANI, Nevada residents both individually and as husband and wife; Does 1 through 100; and Roe Corporations 1 through 100, inclusive,<br><br>Defendants. | Case No. 2:18-cv-00675-KJD-EJY<br><br>**ORDER** |

Before the Court is Plaintiff's Motion for Protective Order (ECF No. 47), Defendants' Response to Plaintiff's Motion for Protective Order (ECF No. 49), Plaintiff's Reply in Support of its Motion for Protective Order (ECF No. 53), Plaintiff's Motion for Leave to File Supplemental Briefing in Support of its Motion for Protective Order (ECF No. 56), Defendants' Response to Plaintiff's Motion for Leave to File Supplemental Briefing in Support of its Motion for Protective Order (ECF No. 58), and Plaintiff's Reply in Support of its Motion for Leave to File Supplemental Briefing in Support of its Motion for Protective Order (ECF No. 59). The Court finds as follows.

**I.  BACKGROUND**

In its briefing, Plaintiff alleges the following: Mad Dog was awarded a (1) subcontract from a general contractor named Engineered Structures, Inc., ("ESI") to build a Winco Foods store (ECF No. 1 ¶ 17); (2) subcontract from a general contractor known as McCarthy Building Companies, Inc. ("McCarthy") for a project known as the Indian Springs Collection and Treatment System (*Id*. ¶ 20); and, (3) subcontract from McCarthy for a project known as the AWT Membrane (*Id*. ¶ 23). For each project, Mad Dog was required to post payment and performance bonds in an amount equal to the subcontract price and name the awarding contractor as the obligee (*Id*. ¶¶ 18, 21, 24). At Mad Dog's

1

request, Hanover issued payment and performance bonds for all three projects naming Mad Dog as the bond principal and each awarding contractor as the obligees. *Id*. ¶¶ 19, 22, 25. As a condition of inducement for Hanover's issuance of the bonds, Defendants executed a General Agreement of Indemnity ("GAI"),[1] which required Mad Dog to indemnify Hanover for all losses, costs, and expenses arising out of the bonds. *Id*. ¶ 26. Mad Dog defaulted on all three aforementioned projects for which Hanover issued payment and performance bonds. *Id*. ¶¶ 31, 40, 46. After learning Mad Dog failed to pay all amounts owed, Hanover made payments to those who provided labor or materials or supplies on the projects. *Id*. ¶¶ 34, 43, 49.

After its default, Mad Dog filed suit against ESI (the "ESI Litigation") in the Eighth Judicial District Court of Clark County, Nevada, alleging that it had not been fully paid on the Winco project. *Id*. ¶ 35. In turn, ESI filed an Answer and Counterclaim, including a cause of action against Hanover for issuing the Hanover performance bond. *Id*. ¶ 36. What happened next is a subject of dispute.

Hanover claims Mad Dog blocked Hanover's settlement offer to ESI, under which ESI agreed to pay Hanover $100,000 and dismiss ESI's claims against Mad Dog and Hanover. ECF No. 47 at 6:16–18. Hanover further contends that Mad Dog convinced the state trial court, through motion practice, that the GAI did not confer a right on Hanover to settle on Mad Dog's behalf. *Id*. at 13 n.11. Defendants claim Hanover: (i) surreptitiously negotiated with ESI to settle the case for much less than Mad Dog's settlement range; (ii) shut Mad Dog out of settlement discussions once Hanover's efforts were discovered; and, (iii) filed a Motion to Enforce Settlement Agreement in an attempt to force Mad Dog's compliance. ECF No. 14 ¶¶ 23–27. Following a bench trial, the state trial court determined "Hanover overstepped its authority in reaching the Settlement Agreement and Mutual Release with ESI," and denied relief to both Mad Dog and ESI. ECF No. 49-1 at 9:6–7, 18:2–4.

Hanover now sues all Defendants in this Court to enforce its contractual indemnification rights and recover: (i) all losses, costs, and expenses incurred under the GAI, with pre and post-judgment interest; (ii) an award of Hanover's attorneys' fees and costs incurred in litigating this

---

[1] Plaintiff attached the General Agreement of Indemnity ("GAI") as Exhibit A to its Motion for Protective Order. ECF No. 47-1.

action; and, (iii) additional relief this Court deems just and equitable. ECF No. 1 at 8:20–9:6. In return, Defendants filed an Answer and Counterclaim against Hanover asserting claims for breach of contract, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, accounting, and special damages of attorneys' fees. ECF No. 14. On September 27, 2019, the Court granted Plaintiff's Motion for Partial Summary Judgment. ECF No. 54.

At issue presently are Defendants' deposition notices directed at Hanover's attorney of record, Patrick F. Welch and Scott F. Frerichs (collectively, "Hanover's Counsel"). ECF No. 47 at 3 n.4.

## II. DISCUSSION

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. ..." Fed. R. Civ. P. 26(c)(1). The burden of persuasion under Fed. R. Civ. P. 26 is on the party seeking the protective order. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "To meet that burden of persuasion, the party seeking the protective order must show good cause by demonstrating a particular need for the protection sought." *Barket v. Clark*, No. 2:12-cv-00393-JCM-GWF, 2013 WL 647507, *2 (D. Nev. Feb. 21, 2013), *citing Beckman Indus., Inc., v. Int'l. Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). "A mere showing that the discovery may involve some inconvenience or expense does not suffice to establish good cause under Rule 26(c). . . ." *U.S. E.E.O.C. v. Caesars Entertainment, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) (internal citation omitted).

"[T]he Federal Rules of Civil Procedure do not specifically prohibit the taking of opposing counsel's deposition." *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) (internal citation omitted). Although deposing opposing counsel is not absolutely prohibited, it is disfavored. *Harter v. CPS Sec. (USA), Inc.*, No. 2:12-cv-00084-MMD-PAL, 2013 WL 129418, at *8 (D. Nev. Jan. 9, 2013) (internal citation omitted). This is because "allowing the deposition of opposing counsel 'not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation.'" *Id.*, *citing Shelton*, 805 F.2d at 1327. Deposing opposing counsel also "'detracts from the quality of client representation,' and has a "chilling effect" on attorney-client representations.'" *Id.* (internal citation omitted). Citing these

3

negative consequences, the "Nevada Supreme Court therefore adopted *Shelton*'s three-factor test for determining when a party may take the deposition of opposing counsel." *Id*. (internal citation omitted). In order for depositions of opposing counsel to go forward, the *Shelton* standard requires a party to show that: "(1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id*. (internal citations omitted). Consequently, a party seeking to depose opposing counsel bears a "difficult burden." *Ditech Fin. LLC v. SFR Invs. Pool 1, LLC*, No. 2:15-cv-476-JCM-VCF, 2016 WL 4370034, at *2 (D. Nev. Aug. 15, 2016). Plaintiff urges the Court to assess whether Defendants' depositions of Hanover's Counsel should proceed under *Shelton*'s heightened standard. ECF No. 47 at 7:25–8:2.

Defendants argue that *Shelton*'s heightened standard does not apply to this case, and instead asks this Court to apply the *Pamida* rule. ECF No. 49 at 10:12–12:24. In *Pamida, Inc. v. E.S. Originals, Inc.*, the Pamida department store brought an indemnification suit against shoe manufacturer Dynasty after the store was sued by a patentholder alleging patent infringement. 281 F.3d 726 (8th Cir. 2002). Pamida was represented by the same attorneys in the indemnification suit as it was in the concluded patent infringement suit. *Id*. at 728. Dynasty sought to depose Pamida's attorneys on issues including "what actions Pamida took to give Dynasty notice of the patent infringement action . . . and [Pamida's] claim for indemnity from Dynasty as well as whether the $750,000 in attorneys' fees sought by Pamida were reasonably incurred in defending the patent infringement action." *Id*. at 729. In its analysis, the court in *Pamida* distinguished the *Shelton* test as one that "was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." *Id*. at 731. Under the specific facts provided in *Pamida*, proposed depositions of opposing counsel should be evaluated under the ordinary discovery standards of the Federal Rules of Civil Procedure and any asserted privileges. *Id*.

4

As Plaintiff points out, "[t]his District follows the *Shelton* standard." ECF No. 53, *citing Ditech Fin. LLC*, 2016 WL 4370034; *Couturier v. Am. Invsco Corp., et al.*, No. 2:12-cv-01104-APG-NJK, 2013 WL 4499008, at *1 (D. Nev. Aug. 20, 2013); *Harter*, 2013 WL 129418 at *9; *Fernandez v. Penske Truck Leasing Co., L.P.*, 2013 WL 438669, at *2 (D. Nev. Feb. 1, 2013); *Kabins Family Ltd. P'Ship v. Chain Consortium*, No. 2:09-cv-01125-GMN-RJJ, 2012 WL 13048564, at *2 (D. Nev. Sept. 28, 2012). "District courts in this district and elsewhere in the Ninth Circuit recognize *Shelton* as the leading case on attorney depositions." *Chao v. Aurora Loan Servs., LLC*, No. C 10-3118 SBA (LB), 2012 WL 5988617, at *3 (N.D. Cal. Nov. 26, 2012) (collecting cases). The Court follows the prevailing trend and applies the *Shelton* factors to determine whether the Defendants' depositions of Hanover's Counsel should go forward.

**A.      The *Shelton* Factors Support Not Deposing Hanover's Counsel**

As explained below, Hanover demonstrates good cause for issuing a protective order preventing Plaintiff's notices of Hanover's Counsel's depositions from going forward as Plaintiff has shown that Defendants seek to depose its counsel in contravention of the *Shelton* rule.

> 1. <u>Plaintiff's Notices of Defendants' Counsel's Depositions Should Not Go Forward Because the Information Sought is Readily Available from Other Sources</u>.

Defendants state they need to depose Hanover's Counsel, as the only source of information, with respect to "(i) the personal acts of Hanover's Counsel before and during the State Court Case; (ii) the exchange of thousands of emails between Hanover's Counsel and the Defendants; and[,] (iii) the attorneys' fees, and corresponding invoices, allegedly incurred by Hanover in connection with the bonds at issue and the State Court Case." ECF No. 49 at 13:9–13. However, when consulting the first factor of the *Shelton* test, the record in this case "indicates that the information sought can be . . . obtained by means other than deposing [opposing counsel]." *Shelton*, 805 F.2d at 1327.

Defendants cite two cases in which the deposition of opposing counsel was appropriate because the attorney was a "fact witness such as an actor or viewer, rather than 'one whose role in the transaction is not central to the dispute.'" ECF No. 49 at 11:19-24 (citing *Am. Cas. Co. v.*

5

*Krieger*, 160 F.R.D. 582, 588 (S.D. Cal. 1995); *Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990)). The court in *Krieger*, however, noted that:

> the Johnston court's holding . . . appears to be the exception. Most courts which have addressed these issues have held that the taking of opposing counsel's deposition should be permitted only in limited circumstances, and that, because of the potential for abuse inherent in deposing an opponent's attorney, the party seeking the deposition must demonstrate its propriety and need before the deposition may go forward. . . . Courts have reached this conclusion even when it is clear that the attorney is a witness to relevant, nonprivileged events and/or conversations.

160 F.R.D. at 588.

Defendants also cite a Northern District of California case for the proposition that "concerns [of deposing opposing counsel] are diminished when the subject matter of the deposition of opposing counsel is not his conduct in the pending case but his percipient knowledge of the events surrounding a prior concluded litigation." ECF No. 49 at 12:6-8, *citing ATS Products, Inc. v. Champion Fiberglass, Inc.*, No. 13-cv-02403-SI (DMR), 2015 WL 3561611, at *6 (N.D. Cal. June 8, 2015). While this proposition does appear in *ATS Products*, the court ultimately held that the defendant was not entitled to depose opposing counsel without "first attempt[ing] to obtain that information from other sources more convenient and less burdensome than through the disfavored practice of deposing opposing counsel." 2015 WL 3561611 at *6.

With respect to "the personal acts of Hanover's Counsel," Defendants state that "Hanover's Counsel participated in and/or witnessed acts and events that form the basis for Defendants['] counterclaims." ECF No. 49, at 13:14-15. Defendants claim that "[a]s percipient witnesses … there are no other means to obtain percipient testimony … as only Hanover's Counsel can testify as [sic] to what was perceived." *Id.* at 13:18-20. Defendants also state that "the information sought regarding Hanover's Counsel's personal actions . . . are central to the Defendants' defenses and Counterclaims." *Id.* at 16:6-8. This is the entirety of the argument offered by Defendants in support of their contention that no means other than deposing Hanover's Counsel exists to get the information they seek. *Id.* at 13:6-20. These circular arguments are not persuasive.

When a party fails to explain why it cannot seek information from a source other than the opposing party's counsel, the request to depose such counsel is clearly not favored. *Ditech Fin. LLC*, 2016 WL 4370034 at *2. Applying the first *Shelton* factor in its analysis, the court in *Ditech Fin. LLC* prevented plaintiff's depositions of opposing counsel from moving forward because plaintiff could obtain information about defendant's management and operations from defendant's former employees instead. *Id*. That reasoning is applicable here.

In fact, as Plaintiff suggests, "Defendants fail to recognize that Defendants and/or their former counsel participated in those meeting or communications" that "form the basis of Defendants' Counterclaims. . . . By participating in these communications themselves, Defendants have personal knowledge of information they seek from Hanover's Counsel." ECF No. 53 at 7:19–20, 25–27. To this end, Defendant Amy Firmani offered the following in opposition to summary judgment:

- Consistent with our agreement to work together, . . . John Firmani, me, and Mr. Gebhart [Mad Dog's counsel for the ESI Litigation] met with Mr. Sanford [Hanover's representative] and Mr. Frerichs [Hanover's outside counsel] . . . to collectively plan and strategize the manner in which Mad Dog and Hanover would proceed against [ESI].

- Me, John Firmani, Mad Dog, and Hanover worked even more closely, collaborating on how to complete the work, cover the costs of the work, and handle any claims from subcontractors that arose.

ECF No. 37-2 ¶¶ 6 and 9. Further, Defendants' Answer and Counterclaim demonstrate that Mr. Gebhart was a percipient witness to the ESI Litigation. As stated by Defendants:

well before the ESI Lawsuit began, Hanover met with Mr. Gebhart to strategize and coordinate a unified front against ESI. Upon discussing the litigation strategy, Hanover approved and raised no issues regarding Mr. Gebhart's representation and strategy, or its exclusion from the pursuit of Mad Dog's Claims for Payment. Hanover advised it was pleased with Mr. Gebhart and would defer to him to handle the case in its entirety.

ECF No. 14 at 7 ¶ 17.

Given the above, it remains unclear to this Court what Defendants seek to gain from deposing Hanover's Counsel about their personal acts that would not be available from other less burdensome sources. And, as discussed below, anything Defendants cannot get from more convenient sources likely falls within the attorney-client privilege, work-product doctrine or would otherwise be

disproportionate to the needs of the case given that Defendants' breach of fiduciary duty claim is no longer pending (ECF No. 54) and the accounting claim regarding attorney's fees is seriously challenged by virtue of the GAI. In sum, for these reasons alone, Defendants' fail to establish there is no other means to obtain the information sought other than to depose Hanover's Counsel.

The same analysis is true for the issue pertaining to the exchange of thousands of emails. That is, Defendants argue that it "appears that in some instances Hanover's Counsel offered strategic advice to the Defendants that helped create the Special Relationship." ECF No. 49 at 8:9–10. Defendants do not discuss how this information relates to any other claim, which is problematic given that the fiduciary duty claim is no longer viable.

Defendants also state, in conclusory fashion, that "Hanover's Counsel composed and exchanged numerous email communications with the Defendants," and state that "there are no other means to obtain percipient testimony, as only Hanover's Counsel can testify as to what was perceived." *Id*. at 13:15–16, 18–20. But, without explaining what it is about Hanover's Counsel's "perceptions" Defendants seek, the Court is left with attempting to justify the depositions requested. This is not the Court's role.

Defendant Amy Firmani declares in opposition to summary judgment:

> Evidence of the joint collaboration between Mad Dog and Hanover, the complete circumstances of Mad Dog's Relationship with Hanover . . . , and Mad Dog's claim that a fiduciary relationship was created, is believed to be supported by Mr. Gebhart's emails, Mr. Sanford's emails, and Mr. Frerich's emails, and Mr. Gebhart's testimony.

ECF No. 37-2 ¶ 13. This statement confirms that sources other than Hanover's Counsel are available to discuss emails.[2] While the Court acknowledges that Mr. Gebhart left the law firm where he practiced during the time of the events in question and now resides in Colorado, this development has little effect on Defendants' weighty burden of demonstrating that no other means exist to obtain the sought information from opposing counsel.

---

[2] Further, as Plaintiff points out, "[i]f Mad Dog believes that communications between Hanover/its counsel and ESI are somehow relevant then Mad Dog should obtain such information from ESI." ECF No. 47 at 10:21–23.

8

Finally, Defendants' third proffered reason for deposing Hanover's Counsel fails to provide the Court any reason to deny Plaintiff's Motion for Protective Order. Defendants claim that Hanover's Counsel "performed the tasks and generated the invoices that comprise the alleged attorneys [sic] fees Hanover claims to have incurred and for which it seeks indemnity." ECF No. 49 at 13:16-18. Even assuming, *arguendo*, that Hanover's Counsel is the only source of information about these attorneys' fees, this information is disproportionate to the needs of this case for the reasons explained below.

2. <u>Plaintiff's Notices of Defendants' Counsel's Depositions Should Not Go Forward Because Defendants Seek Irrelevant and Privileged Information</u>.

The second *Shelton* factor requires Defendants to show that the information sought through deposing Plaintiff's counsel is relevant and nonprivileged. *Shelton*, 805 F.2d at 1327. However, as explained by the court in *Guerrero v. Wharton*, No. 2:16-cv-01667-GMN-NJK, 2017 WL 7314240, *2 (D. Nev. Mar. 30, 2017):

> Relevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case. . . . To fall within the purview of appropriate discovery, the information sought must also be proportional to the needs of the case, including consideration of the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Defendants fail to make this showing.

*i. Defendants' Depositions Seek Irrelevant Information that is Not Proportional to the Needs of this Case.*

To the extent Defendants are deposing opposing counsel to inquire about the formation of a special relationship between Hanover's Counsel and Defendants, such an inquiry is irrelevant to the case. (ECF No. 54 at 4:19-5:15; finding no special relationship between the parties exists, and, as such, the Court found no fiduciary duty owed by Hanover to Mad Dog.) In fact, in its decision on the Motion for Partial Summary Judgment, the Court declined Mad Dog's request for additional discovery on its fiduciary duty claim. *Id.* at 6:3-4. Thus, it is clear that to the extent Defendants seek Hanover's Counsel's depositions to support their breach of fiduciary duty claim, this reasoning fails.

Defendants' citations to the elements of breach of contract, breach of the implied covenant of good faith and fair dealing, and accounting do nothing to support the relevancy or proportionality of the deposition requests. In fact, it is only in their discussion of their claim for accounting where the Defendants provide the Court with any reason that depositions of opposing counsel could, potentially, be proportional and relevant. ECF No. 49 at 15:1-16:4.

Defendants cite to several cases in which courts limit damages a surety could collect to attorneys' fees and costs incurred in good faith. *Id*. at 15:7-27. However, this argument is not persuasive in this case.

        a.    <u>The reasonableness or necessity of attorneys' fees incurred by Hanover's Counsel in the ESI Litigation is irrelevant because the GAI contains a conclusive *prima facie* evidence clause</u>.

Defendants aver that deposing opposing counsel is relevant to their counterclaims because Hanover's Counsel's perceptions of the special relationship between the parties in the ESI Litigation "will help determine whether the task performed and corresponding fee was necessary and reasonable." *Id*. at 7:24-8:1. Defendants argue relevance again in their brief, reiterating that the depositions "will establish the creation of the Special Relationship required to assert the breach of fiduciary duty." *Id*. at 16:9-10. For reason previously stated, these arguments provide no support for Defendants' position. However, Defendants also argue that the depositions of opposing counsel will establish their "level of activity in the State Court Case . . . [a]nd . . . will shed light on the circumstances surrounding the vast number of email exchanges between Hanover's Counsel and the Defendants." *Id*. at 16:11-12. All of this information, according to Defendants, will be used to determine if attorneys' fees and costs were reasonable. *Id*. at 16:13-15.

In contrast, Plaintiff argues that the *prima facie* evidence clause in the GAI signed by the parties serves as conclusive evidence of necessity and expediency and, therefore, there is no reason to inquire into the reasonableness of attorneys' fees. ECF No. 47 at 11:18–12:13. While the right to employ its own counsel is important, Plaintiff demonstrates that the inclusion of a *prima facie* evidence clause in Paragraph 3 of the GAI renders irrelevant any discussion about reasonableness or necessity of the amounts paid by Hanover to its attorneys. *Id*. That is, the parties jointly and

severally agreed that "[v]ouchers or other evidence of payment by [Hanover] shall be *conclusive evidence* of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to [Hanover] therefor." ECF No. 47-1 at 2 (emphasis added).

"General indemnity agreements . . . are enforceable under Nevada law." *Travelers Cas. and Sur. Co. of Am. v. Big Town Mech., LLC*, No. 2:12-cv-02072-APG-VCF, 2013 WL 5818601, at *3 (D. Nev. Oct. 8, 2013) (internal citations omitted). Specifically, an "[t]he indemnity agreement is an enforceable, legal contract providing for protection of the indemnitee . . . ." *Emp'rs Mut. Cas. Co. v. Constr. Servs.*, No. 2:15-cv-01592-JCM-GWF, 2016 WL 1317721, at *2 (D. Nev. Apr. 1, 2016) (internal citations omitted). "When parties expressly deal with the question of indemnity in a written contract, the Ninth Circuit concludes that they intended what was expressed in their agreement, not that some common law rule should govern their rights and liabilities." *Winnemucca Farms, Inc. v. Eckersell*, No. 3:05-cv-00385-RAM, 2008 WL 8943375, at *5 (D. Nev. May 14, 2008), *citing Booth-Kelly Lumber Co. v. S. Pac. Co.*, 183 F.2d 902, 906–07 (9th Cir. 1950). As stated in *Old Republic Ins. Co. v. City Plan Dev., Inc.*, No. 2:16-cv-00903-JCM-NJK, 2018 WL 283250, at *5 (D. Nev. Jan. 3, 2018):

> [p]rima facie evidence clauses govern the propriety of liabilities under an indemnity agreement. When this clause is included in an indemnity agreement, a surety's provision of a voucher or other evidence of payment constitutes *prima facie* evidence of the propriety of such payment and of the indemnitor's liability to the surety for such amount.

As was true in *Old Republic*, the GAI at issue here creates a contractual obligation. The parties agreed to the indemnity agreement and its terms as written. And, as explained in *Winnemucca Farms*, the Court concludes that the parties intended the vouchers or other evidence of payment by Hanover to be at least *prima facie* evidence of the fact and amount of Mad Dog's liability. Nonetheless, Defendants point to the requirement that the Court determine if the attorney's fees were incurred in "good faith"; however, a motion for attorney's fees is not before the Court. Rather, the issue before the Court is whether Defendants may depose opposing counsel. For this reason, the Court looks not only to the fact that the GAI contains a *prima facie* evidence clause, but that Defendants ignore that the language in the GAI stating that "[v]ouchers or other evidence of payment by the Surety shall be *conclusive evidence* of the fact and amount of such liability, necessity, or

11

expediency and of the Indemnitors' liability to the Surety therefor." ECF No. 47-1 at 2 (emphasis added). This is the contract to which the parties agreed and are bound. The Court finds that the parties intended what they expressed and are not governed by a common law rule. While the attorney's fees will ultimately have to be proven through payments made, at this juncture, the Court finds no basis to allow Defendants to question Plaintiff's counsel about such fees.[3]

           *ii.*  *Defendants' Depositions Seek Protected Information.*

"The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures." *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) (internal citation and quotation marks omitted). "Attorney-client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation." *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 607 (D. Nev. 2005), *citing id.* A matter that is committed to counsel is "prima facie so committed for the sake of . . . legal advice," and "therefore within the privilege unless it clearly appears to be lacking in aspects requiring legal advice." *Chen*, 99 F.3d at 1502, *citing* 8 John H. Wigmore, *Evidence*, § 2296, 566–67 (McNaughton rev. ed. 1961) (internal alterations omitted).

The work-product doctrine protects the "inviolate" thoughts of an attorney from disclosure, and includes "interviews, statements, memoranda, correspondence, briefs, mental impressions, [and] personal beliefs. . . ." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). Notwithstanding, "[w]here *relevant* and *non-privileged* facts remain hidden in an attorney's file and where production of those

---

[3] Defendants cite a case from the Fifth Circuit to argue that reimbursement for legal costs is allowed under an indemnity contract "only if it is necessary for the surety to retain separate counsel, if the amount of the fees claimed is reasonable, and if the surety has acted in good faith towards the bond principal." *Jackson v. Hollowell*, 685 F.2d 961, 966 (5th Cir. 1982). This case provides poor support for Defendants' arguments. First, the Fifth Circuit applied Mississippi law when adopting "[t]he rule that a surety is entitled to be reimbursed only for necessary expenses. . . ." *Id.* at 965. In contrast, the Nevada Supreme Court states that assessing the "reasonableness" of attorneys' fees contravenes the purpose of a GAI to hold the surety harmless for all expenses that result from issuing a bond. *Transamerica Premier Ins. Co. v. Nelson*, 878 P.2d 314, 317–18 (Nev. 1994) (giving effect to indemnity agreement provision that "an itemized statement of expenses is *prima facie* evidence of the fact and extent of the liability of the indemnitor"). Second, the indemnity agreement at issue in *Jackson* does not appear to have contained a *prima facie* evidence clause. The clause in the GAI at issue clearly does, and goes further to establish the parties agreement that payment is conclusive evidence. ECF No. 47-1 at 2.

facts is *essential* to the preparation of one's case, discovery may properly be had." *Id*. (emphasis added). "The work product rule is not based on the confidentiality of the attorney-client relationship, and it does not disappear when the balloon wall of confidentiality is breached unless the breach 'has substantially increased the opportunities for potential adversaries to obtain the information.'" *Goff v. Harrah's Operating Co., Inc.*, 240 F.R.D. 659, 661 (D. Nev. 2007), *citing* Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure: Civil 2d* § 2024, 369 & n.52 (1994).

Plaintiff maintains Defendants are seeking privileged and/or confidential information by seeking to depose Hanover's Counsel because "in all likelihood the focus of any inquiry will be on why Hanover elected to employ its own counsel and the basis for the tactical decisions made during the course of the ESI litigation." ECF No. 47 at 13:16–18. Defendants counterargue that "there is no privilege protecting Hanover's Counsel's perception of emails exchanged with the Defendants or the perception of various acts and events that created a Special Relationship with Defendants." ECF No. 49 at 16:20–22. Further, Defendants assert that "[t]he attorney-client privilege applies only to confidential professional communications, and the payment of fees is usually incidental to the attorney-client relationship." *Id*. at 16:17–20, *citing Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995); *United States v. Horn*, 976 F.2d 1314, 1317 (9th Cir. 1992) (internal quotation marks omitted).

Without doubt, Hanover's Counsel's mental impressions, strategies, conclusions, or theories concerning the ESI Litigation are protected by the work-product doctrine. This is because whatever thought processes went into the drafting of an email by Hanover's Counsel to Defendants or into planning legal strategy necessarily invades the work-product doctrine. Further, communication between Hanover and its counsel regarding the ESI Litigation is clearly attorney-client privileged. Finally, although information about the payment of attorneys' fees is neither protected nor confidential, the reasonableness and necessity of fees are disproportionate to the needs of this case given the language in the GAI.

### 3. Plaintiff's Notices of Defendants' Counsel's Depositions Should Not Go Forward Because They Seek Information That is Not Necessary for the Viability of Defendants' Claims and Defenses.

The third *Shelton* factor requiring a showing of "information . . . crucial to the preparation of the case" is not present here. "[T]he terms 'relevant' and 'crucial' cannot be synonymous. To hold otherwise would be to render the third *Shelton* factor redundant. . . . Thus for information to be crucial, it must have some greater importance to the action than merely being relevant." *Ditech Fin. LLC*, 2016 WL 4370034 at *3 (internal citation omitted). "Crucial" information includes information necessary for the survival of a claim or defense. *See Mid-Century Ins. Co. v. Wells*, No. 2:12-cv-02041-GMN-VCF, 2013 WL 12321555, at *3 (D. Nev. June 17, 2013).

Leaving aside the dismissed fiduciary duty claim, Defendants represent that the information sought from Plaintiff's counsel is crucial to each of their counterclaims. ECF No. 49 at 16:23-17:4. Defendants then make the argument that the information sought "will serve to establish the Counterclaims" and is "crucial to their survival . . . ." *Id*. at 16:27-28. Defendants conclude that they "may not be able to conclusively satisfy the elements of the Counterclaims" without this testimony. *Id*. at 17:1-2. While Defendants state the conclusion that their remaining claims may not survive without opposing counsels' testimony, they do not say why. Such testimony, as discussed, is not relevant to the dismissed fiduciary duty claim or reasonableness of attorneys' fees under Defendants' claim for accounting. Therefore, Defendants' argument must relate to the claims remaining for breach of contract and breach of implied covenant of good faith and fair dealing. But, Defendants say absolutely nothing about the unique, crucial information Hanover's Counsel knows that cannot be obtained from another source and/or that would not be protected by the attorney-client privilege or work-product doctrine that would relate in any way to these claims. Defendants do not provide a proffer on relevance except as it may relate to their accounting or breach of fiduciary duty claims. Because, as discussed above, Defendants' inquiry into attorney's fees or fiduciary obligations is not warranted, Defendants fail to demonstrate that their depositions of Hanover's Counsel is crucial to the preparation of their case.

## III. CONCLUSION

Plaintiff demonstrates that Defendants' proposed depositions of its counsel fail to meet the *Shelton* standard. This conclusion and good cause appearing,

IT IS HEREBY ORDERED that Plaintiff's Motion for Protective Order (ECF No. 47) is GRANTED. Defendants shall not be permitted to depose Patrick F. Welch or Scott F. Frerichs.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Supplemental Briefing in Support of its Motion for Protective Order (ECF No. 56) is DENIED as moot.

DATED THIS 12th day of November, 2019.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE